IN THE MATTER OF PASCO

Docket No. 87051. Submitted February 11, 1986, at Detroit.—Decided
    April 9, 1986.

> Kathy Pasco, the minor daughter of respondent, Penny O'Keefe,
> and Harvey Pasco, came under the jurisdiction of the Lenawee
> Probate Court after she was brought by respondent to Bixby
> Hospital. Kathy was diagnosed as having a fractured skull,
> anemia and failure to thrive. She was wearing a sleeper which
> was stained with day-old feces and mud-like marks. There was
> dirt in her ears and between her toes. Although Kathy was
> three and one-half months old, she weighed only eight pounds
> and twelve ounces. Shortly after Kathy's admission to the
> hospital, respondent moved to Nebraska. Kathy remained a
> temporary ward of the court until a hearing was held to decide
> a motion of Kathy's guardian ad litem to terminate the paren-
> tal rights of Kathy's parents. At the hearing, evidence was
> presented that respondent had failed to complete the court-
> ordered counseling program or continue her education. Al-
> though respondent had been ordered to remain in regular
> contact with caseworkers in both Nebraska and Michigan, she
> had failed to do so. In fact, respondent's last contact with her
> Nebraska caseworker was in October, 1984, when respondent
> indicated that she wished to relinquish her rights to her
> daughter. In addition, respondent had failed to visit Kathy
> since June, 1984, even though Kathy had been transferred to a
> foster home in Nebraska in order to facilitate visitation. The
> Nebraska caseworker further testified that respondent had not
> cooperated with efforts to improve herself as a mother or to
> prepare an environment for her child. She noted that respon-
> dent had had at least 15 addresses since her move to Nebraska
> in April, 1982. The worker expressed the opinion that there
> was no bonding between the mother and child and doubted that
> Kathy even knew respondent was her mother. Both casework-
> ers opined that the respondent's parental rights should be

REFERENCES

Am Jur 2d, Parent and Child §§ 8-25, 39, 40.
Validity of state statute providing for termination of parental
    rights. 22 ALR4th 774.

terminated. Furthermore, respondent's own attorney indicated on the record that respondent had not answered his requests for assistance in preparing for the termination hearing. The court, Robert J. Baker, J., found neglect and terminated the parental rights of respondent and Harvey Pasco. Respondent appealed. *Held:*

1. Termination of parental rights because of neglect requires real evidence of long-term neglect or serious threats to the future welfare of the child. The evidence was sufficient to support a finding of neglect.

2. The evidence was sufficient to support termination of parental rights for respondent's failure to establish a reasonable probability that she would be able to establish a proper home for the child within 12 months.

3. Failure of a prosecutor to appear at a hearing to terminate parental rights does not constitute reversible error in the absence of an affirmative showing of prejudice. Respondent did not show any prejudice as a result of the prosecutor's failure to appear.

4. Jurisdiction of the probate court was properly invoked.

5. The court did not abuse its discretion in denying respondent's motion for a change of venue.

6. Respondent was not denied effective assistance of counsel.

Affirmed.

1. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — NEGLECT.

Termination of parental rights because of neglect requires real evidence of long-term neglect or serious threats to the future welfare of the child.

2. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — APPEAL.

The findings of a probate court in a proceeding to terminate parental rights may not be set aside unless clearly erroneous.

3. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS.

Failure of a parent to comply with court-ordered treatment does not, standing alone, justify termination of parental rights.

4. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — PARTIES — APPEAL.

Failure of a prosecutor to appear at a hearing to terminate parental rights does not constitute reversible error in the absence of an affirmative showing of prejudice.

5. Venue — Change of Venue — Appeal.
   The grant or denial of a change of venue is discretionary and the
   Court of Appeals will not reverse absent an abuse of discretion.

*Lawrence C. Force,* for the minor child.

*Douglas Hartung, P.C.* (by *Douglas Hartung),* for respondent Penny Lawson O'Keefe.

Before: MacKenzie, P.J., and Cynar and G. T. Martin,* JJ.

Per Curiam. Respondent, Penny O'Keefe, appeals as of right from the order of the probate court judge terminating her parental rights in her minor daughter, Kathy Pasco. Thomas Raymond Myers, the natural father, does not appeal the order terminating his parental rights.

Respondent first alleges that the probate court erred by terminating her parental rights pursuant to MCL 712A.19a, subds (e) and (f); MSA 27.3178(598.19a), subds (e) and (f). That statute provides in relevant part:

"Sec. 19a. Where a child remains in foster care in the temporary custody of the court following the initial hearing provided by section 19, the court may make a final determination and order placing the child in the permanent custody of the court, if it finds any of the following:

                    *   *   *

"(e) The parent or guardian is unable to provide a fit home for the child by reason of neglect.

"(f) The child has been in foster care in the temporary custody of the court on the basis of a neglect petition for a period of at least 2 years and upon rehearing the parents fail to establish a reasonable probability that they will be able to reestablish a proper

---

* Former circuit judge, sitting on the Court of Appeals by assignment.

home for the child within the following 12 months."
(Footnote omitted.)

Parental rights may not be terminated unless it is established by clear and convincing evidence that termination is warranted. *In the Matter of Harmon,* 140 Mich App 479; 364 NW2d 354 (1985); *In the Matter of LaFlure,* 48 Mich App 377; 210 NW2d 482 (1973), *lv den* 390 Mich 814 (1973). To justify termination of parental rights based on neglect, "real evidence of long-time neglect, or serious threats to the future welfare of the child" must be shown. *Fritts v Krugh,* 354 Mich 97, 116; 92 NW2d 604 (1958). We will affirm the probate court's findings unless they are clearly erroneous. *In re Cornet,* 422 Mich 274; 373 NW2d 536 (1985).

Our review of the record reveals that there was clear and convincing evidence to support the order of termination. Kathy Pasco first came under the jurisdiction of the probate court after she was brought by respondent to Bixby Hospital. Kathy was diagnosed as having a fractured skull, anemia and failure to thrive. She was wearing a sleeper which was stained with day-old feces and mud-like marks. There was dirt in her ears and between her toes. Although Kathy was three and one-half months old, she weighed only eight pounds and twelve ounces. Shortly after Kathy's admission to the hospital, respondent disappeared and her whereabouts remained unknown until just prior to the adjudication hearing in June, 1982.

Kathy remained a temporary ward of the court until the termination hearing in July, 1985. At the hearing, evidence was presented that respondent had failed to complete the court-ordered counseling program or continue her education. Although respondent had been ordered to remain in regular contact with caseworkers in both Nebraska and

Michigan, she had failed to do so. In fact, respondent's last contact with her Nebraska caseworker was in October, 1984, when respondent indicated that she wished to relinquish her rights to her daughter. In addition, respondent had failed to visit Kathy since June, 1984, even though Kathy had been transferred to a foster home in Nebraska in order to facilitate visitation.

The Nebraska caseworker further testified that respondent had not cooperated with efforts to improve herself as a mother or to prepare an environment for her child. She noted that respondent had had at least 15 addresses since her return to Nebraska. The worker expressed the opinion that there was no bonding between the mother and child and doubted that Kathy even knew respondent was her mother. Both caseworkers opined that the respondent's parental rights should be terminated. Furthermore, respondent's own attorney indicated on the record that respondent had not answered his requests for assistance in preparing for the termination hearing.

We conclude that the above evidence amply supported the court's finding of neglect. The quantum of neglect necessary to support termination of parental rights pursuant to MCL 712A.19a(e) is not capable of precise definition. *In the Matter of Kantola,* 139 Mich App 23, 27; 361 NW2d 20 (1984). While we recognize that respondent's failure to comply with the court-ordered treatment plan does not, standing alone, justify termination, see, *e.g., In the Matter of Mason,* 140 Mich App 734; 364 NW2d 301 (1985); *In the Matter of Moore,* 134 Mich App 586; 351 NW2d 615 (1984), we believe that this factor in conjunction with the other evidence presented constitutes clear and convincing evidence of neglect. Here, in addition to respondent's failure to comply with almost every

element of the treatment plan, evidence was presented that the minor child entered the hospital in a physically neglected condition, that there was a total lack of bonding between mother and child, that respondent had expressed an interest in relinquishing her rights to her daughter and that respondent had not visited her daughter for the entire year preceding the termination hearing. When these factors are viewed together, we do not believe the court's finding of neglect was clearly erroneous.

Respondent places considerable reliance on her contention that the probate court failed to indicate that her failure to comply with the court-ordered treatment plan could result in termination of parental rights. However, at the July 1, 1982, hearing, respondent testified that she had been informed by the DSS caseworker that her child "might be taken away". This indicates that respondent was informed of the seriousness of the hearings and the gravity of the consequences. Further, even if respondent was never specifically informed by the court that failure to comply with the plan might result in termination, this would not alter our decision. The focus of our inquiry remains whether the state presented clear and convincing evidence to justify termination. We are at a loss to see how the court's failure to give this warning at the adjudication hearing could have affected either the sufficiency of the evidence presented or our resolution of the ultimate issue.

Moreover, even if the evidence was insufficient to justify a finding of neglect, there was clear and convincing evidence to support the termination of parental rights pursuant to MCL 712A.19a(f); MSA 27.3178(598.19a)(f). Subsection (f) provides for termination if a parent fails to establish a reasonable probability that he or she will be able to establish

a proper home for the child within the next 12 months. The burden of going forward with this evidence rests with the parent. *In the Matter of LaFlure, supra.* Respondent failed to present any evidence to meet this burden. Rather, evidence was presented that respondent had moved repeatedly, had made little attempt to improve her parenting skills and was unlikely to do so in the future. The trial court did not err in terminating respondent's parental rights pursuant to subsection (f).

Respondent next argues that the prosecutor's failure to appear at the termination hearing constituted reversible error. She suggests that the guardian ad litem's role as attorney for the child made it improper for him to act as prosecutor at the hearing. There is no support in case law for the proposition that a prosecutor must be present at the hearing and respondent has failed to demonstrate that any prejudice actually occurred as a result of his absence. In the absence of an affirmative showing of prejudice, we do not believe that the prosecutor's failure to appear constituted reversible error.

Respondent also claims that the probate court's jurisdiction was improperly invoked because respondent had made arrangements to have Kathy placed with respondent's mother at the time of the July 1, 1982, adjudicative hearing. The probate court must establish its jurisdiction before it may consider termination of parental rights. *In the Matter of Taurus F,* 415 Mich 512, 516-517; 330 NW2d 33 (1982), *reh den* 417 Mich 1104 (1983), *app dis* 464 US 923 (1983). Jurisdiction is determined at the adjudicative hearing and is based upon the following provisions of MCL 712A.2(b); MSA 27.3178(598.2)(b):

"(b) Jurisdiction in proceedings concerning any child under 17 years of age found within the county:

"(1) Whose parent or other person legally responsible for the care and maintenance of such child, when able to do so, neglects or refuses to provide proper or necessary support, education as required by law, medical, surgical, or other care necessary for his or her health or morals, or who is deprived of emotional well-being, or who is abandoned by his or her parents, guardian, or other custodian, or who is otherwise without proper custody or guardianship.

"(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian or other custodian, is an unfit place for such child to live in."

Respondent cites *In the Matter of Taurus F, supra,* for the proposition that a mother may properly give custody of her child to a relative without court intervention. However, the facts in the instant case are readily distinguishable from those in *Taurus F.* Here, respondent abandoned her seriously ill infant daughter in a hospital in Adrian, Michigan, following which respondent's whereabouts remained unknown for several months. It was not until three months after respondent had left her daughter that she first suggested that her mother might care for Kathy. Moreover, our review of the record indicates that, unlike the permanent custody considered in *Taurus F,* respondent's mother had only agreed to care for Kathy during the daytime while respondent attended school. Apparently, respondent would still remain the custodial parent and retain primary responsibility for the care of the child. In light of these facts, we do not believe the probate court erred in invoking jurisdiction.

Respondent next argues that the probate court erred in denying her motion for change of venue.

At the final review hearing on April 29, 1985, and following the guardian ad litem's request that a termination hearing be set, respondent's attorney requested that the case be transferred to Nebraska, where respondent and her daughter were residing. The court denied the motion.

Change of venue may be granted "for the convenience of the parties and witnesses, for convenience of counsel, or if an impartial trial cannot be had in the county where the action is pending". PCR 401; MCL 600.856(1); MSA 27A.856(1). The grant or denial of a motion for change of venue is discretionary and this Court will not reverse absent an abuse of discretion. *Brown v Hillsdale County Road Comm,* 126 Mich App 72, 78; 337 NW2d 318 (1983), *lv den* 418 Mich 898 (1983); *Duyck v International Playtex, Inc,* 144 Mich App 595; 375 NW2d 769 (1985) (change of venue in civil actions pursuant to GCR 1963, 403). We find no abuse of discretion in the court's denial of the motion. The motion came over three years after the court assumed jurisdiction. The court was familiar with the case and the surrounding circumstances. Moreover, no evidence was presented that denial of the motion would prevent respondent from attending the terminaiton hearing or prevent an impartial trial. The probate court did not abuse its discretion in denying respondent's motion for change of venue.

Respondent's final argument is that she was denied effective assistance of counsel during the probate proceedings. Although respondent acknowledges that on an individual basis each of her three appointed attorneys has effectively represented her interests, she contends that the frequent change in counsel combined with their inability to communicate with respondent resulted in overall ineffective assistance.

The appropriate standard of representation

which a parent is entitled to in a parental rights termination case has not been clearly delineated. Respondent suggests that the appropriate standard is that found in *People v Garcia,* 398 Mich 250, 264; 247 NW2d 547 (1976), *reh den* 399 Mich 1041 (1977): counsel must perform at least as well as a lawyer with ordinary skill and training, unaffected by any conflict of interest. Even if we apply this standard, we do not believe that respondent was denied effective assistance of counsel.

While it is true that respondent was represented by three different attorneys during the probate court proceedings, she is unable to point to a specific instance in which any of her appointed attorneys failed to protect her interests or acted with less than the ordinary level of skill and training. While she suggests that her first appointed counsel was provided little time for preparation and did not inform her that termination of parental rights could ultimately result, she does not demonstrate how either factor affected his representation of her interests. Neither has she demonstrated that the change in counsel in and of itself adversely affected the quality of representation she received.

Finally, we note that the lack of communication and consultation between respondent and her attorneys can be attributed to respondent's own unwillingness to cooperate with counsel. Her attorney at the termination hearing stated that, although he had repeatedly requested respondent's assistance in preparation for the hearing, she had consistently failed to respond. It was respondent's own unwillingness to cooperate with her appointed counsel which led to a lack of a persuasive presentation on her behalf and not the actions of her attorney. Respondent was not denied effective assistance of counsel.

Affirmed.