*In re* NEAL

Docket No. 97597. Submitted July 28, 1987, at Grand Rapids. Decided October 6, 1987.

The Department of Social Services petitioned the Muskegon County Probate Court to take jurisdiction of Shereka Neal, the daughter of Harry Johnson. The court took jurisdiction and, after a hearing, terminated Mr. Johnson's parental rights based on MCL 712A.19a, subds (d), (e), and (f); MSA 27.3178(598.19a), subds (d), (e), and (f), Tom H. Linck, J. Johnson appealed.

The Court of Appeals *held:*

1. MCL 712A.19a(d); MSA 27.3178(598.19a)(d) provides for termination of parental rights based only on present conditions which would effect future events, not on past conditions of deprivation of a normal home life. The court clearly erred in terminating Johnson's parental rights based on past incarceration.

2. MCL 712A.19a(e); MSA 27.3178(598.19a)(e) provides that parental rights may be terminated upon evidence of such a nature as to establish or seriously threaten neglect of the child for the long-run future. The court's decision to terminate Johnson's parental rights under that provision was not clearly erroneous.

3. The court's decision to terminate Johnson's parental rights based on MCL 712A.19a(f); MSA 27.3178(598.19a)(f) was not clearly erroneous. Johnson failed to meet his burden of establishing a reasonable probability that he would be able to establish a proper home for the child within twelve months.

Affirmed.

1. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS.

MCL 712A.19a(d); MSA 27.3178(598.19a)(d) provides for termination of parental rights based only on present conditions which would effect future events, not on past conditions of deprivation of a normal home life (MCL 712A.19a[d]; MSA 27.3178[598.19a][d]).

REFERENCES

Am Jur 2d, Parent and Child §§ 7, 23 *et seq.*

Validity of state statute providing for termination of parental rights. 22 ALR4th 774.

2. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — NE-
      GLECT.

  Parental rights may be terminated upon evidence of such a
    nature as to establish or seriously threaten neglect of the child
    for the long-run future (MCL 712A.19a[e]; MSA
    27.3178[598.19a][e]).

*Harold F. Closz, III,* Prosecuting Attorney, and
*John M. Karafa,* Assistant Prosecuting Attorney,
for the Department of Social Services.

*David W. Marra,* for Harry Johnson.

Before: CYNAR, P.J., and WEAVER and J. H.
HAUSNER,* JJ.

PER CURIAM. Respondent, Harry Johnson, ap-
peals as of right from a probate court order termi-
nating his parental rights to his minor daughter,
Shereka Neal (born January 27, 1978). We affirm.

The Department of Social Services filed a peti-
tion in October, 1983, requesting that the probate
court take jurisdiction of Shereka and her three
siblings, Reginald, April and Jerry Neal, on the
basis of parental neglect.

The hearing on this petition took place on Octo-
ber 20, 1983. The probate court took jurisdiction of
the children based on the proofs presented. The
court ordered the children to remain with the
mother, Sheree Neal, in her home under the su-
pervision of DSS and the court. Shereka's father
was in prison at the time of the filing of this
petition. He had been incarcerated since April 5,
1981.

A supplemental petition was filed on November
30, 1983. Based on this second petition, Shereka
and her three siblings were removed from their
mother's custody and placed in foster care. At the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

December 22, 1983, formal hearing on the supplemental petition, the parties stipulated that the children be removed from the mother's custody and placed in foster care facilities. Review hearings were thereafter held in May and November, 1984, and May and October, 1985.

On October 17, 1985, a hearing was held on the first petition for permanent wardship regarding Shereka and her two brothers and sister. The mother stipulated to the material allegations in the petition and stipulated to the termination of her parental rights.

Thereafter, evidence was introduced regarding the parental rights of the fathers. Respondent testified that he was presently incarcerated at the Grand Rapids Correction Center. He stated that he was not aware that Shereka had been in foster care until November, 1984. After this hearing, respondent agreed to work with DSS and to arrange a transfer to the Muskegon Correction Center so he could be close to Shereka.

At the April 10, 1986, hearing, respondent indicated a willingness to work with DSS toward returning his daughter to his custody. The children were continued as temporary wards of the court in foster care.

In early May, 1986, respondent met with DSS officials. An informal parent-agency agreement was reached whereby respondent was to obey the rules of the Muskegon Correction Center, attend parent-child workshops, and visit his daughter on Saturdays at the maternal grandmother's home.

At a hearing held on November 13, 1986, the mother and Jeremiah Wickcliffe (father of the other three children) appeared and each stipulated to voluntary termination of their parental rights. Respondent was not present at the hearing due to transportation problems from the Department of

Corrections. As to him, the hearing was rescheduled for December 2, 1986.

At the December hearing, JoAnn Sciba, social worker on the case, testified that she saw respondent in May, 1986, at the Muskegon Correction Center. Respondent was sent back to Jackson prison in June, 1986, because he violated prison rules at the Muskegon Correction Center.

Sciba testified that, while at the Muskegon Correction Center, respondent attended 42½ hours of parent-child workshop classes. Respondent, however, had never visited his daughter before being returned to Jackson.

The maternal grandmother, Dorothy Bailey, stated that in the past three years respondent had no contact with Shereka. The last visit with Shereka took place during Christmas, 1983, when respondent brought her a doll and visited for about fifteen minutes.

Respondent also testified at the hearing. He said he never called his daughter because he did not have the telephone number of the foster home. He believed that he had a good chance of making parole and planned to live and work in Muskegon. He believed that he could reestablish a home for his daughter.

The probate judge issued a written opinion on December 8, 1986, in which he terminated respondent's parental rights. The judge found that respondent was unable to provide a suitable home for the child by reason of the father's neglect of Shereka.

The sole issue before the Court is whether the probate court's findings of fact supporting termination are clearly erroneous.

The probate court terminated respondent's parental rights pursuant to MCL 712A.19a, subds (d),

(e) and (f); MSA 27.3178(598.19a), subds (d), (e) and (f), which provide:

> Sec. 19a. Where a child remains in foster care in the temporary custody of the court following the initial hearing provided by section 19, the court may make a final determination and order placing the child in the permanent custody of the court, if it finds any of the following:
>
> \* \* \*
>
> (d) A parent or guardian of the child is convicted of a felony of a nature as to prove the unfitness of the parent or guardian to have future custody of the child or if the parent or guardian is imprisoned for such a period that the child will be deprived of a normal home for a period of more than 2 years.
>
> (e) The parent or guardian is unable to provide a fit home for the child by reason of neglect.
>
> (f) The child has been in foster care in the temporary custody of the court on the basis of a neglect petition for a period of at least 2 years and upon rehearing the parents fail to establish a reasonable probability that they will be able to reestablish a proper home for the child within the following 12 months.

Respondent argues that the probate judge clearly erred by terminating his parental rights under subsection (d) since this section provides for a prospective application, not a retroactive application of its provisions. Respondent contends that, since the probate judge considered his *prior* imprisonment as a basis for termination, the decision is clearly erroneous.

We review a decision to terminate parental rights under the clearly erroneous standard. *In re Cornet,* 422 Mich 274, 277; 373 NW2d 536 (1985); *In re Bedwell,* 160 Mich App 168, 172; 408 NW2d 65 (1987). A finding is clearly erroneous when,

although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed. *In re Cornet, supra,* p 278, quoting *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976). The petitioner bears the burden of proving by clear and convincing evidence that termination of parental rights is warranted. *In re Bedwell, supra,* p 173.

Subsection 19a(d) provides two alternate bases for termination. The first ground focuses on the nature of a parent's or guardian's conviction which would make the parent or guardian unfit for future custody. The second basis looks at whether a parent or guardian will be imprisoned for a length of time in which the child will be deprived of a normal home for a period of more than two years.

The probate judge relied on the second basis since he found that respondent had been imprisoned for a period in excess of two years and that Shereka had been deprived of a normal home for longer than two years.

Upon a careful reading of § 19a(d), we find that its sole focus is whether the imprisonment will deprive a child of a normal home for two years in the future, and not whether past incarceration has already deprived the child of a normal home. Case law supports such a construction. See *In re Ovalle,* 140 Mich App 79, 84; 363 NW2d 731 (1985); *In re Hurlbut,* 154 Mich App 417, 424; 397 NW2d 332 (1986).

Therefore, the probate court's findings under section 19a(d) are clearly erroneous since it considered respondent's past incarceration as a basis for terminating his parental rights.

Although we conclude that the probate court's termination decision was clearly erroneous under

§ 19a(d), we conclude nonetheless that there was clear and convincing evidence to support termination under subsections (e) and (f).

Subsection (e) permits termination of parental rights on the basis of neglect. In *Fritts v Krugh,* 354 Mich 97, 114; 92 NW2d 604 (1958), our Supreme Court stated that the "entry of an order for permanent custody due to neglect must be based upon testimony of such a nature as to establish or seriously threaten neglect of the child for the long-run future."

We find that clear and convincing evidence was presented to sustain termination on the basis of neglect. The evidence indicated that only once in three years had respondent communicated with Shereka. This communication took place because respondent faced the possibility of returning to Jackson prison and he was willing to voluntarily relinquish any rights to Shereka in exchange for not being transferred to Jackson. Hence, we find no error.

Finally, the probate court's determination to terminate under subsection (f) is not clearly erroneous. Subsection (f) provides for termination if a parent fails to establish a reasonable probability that he or she will be able to establish a proper home for the child within the next twelve months. The burden of going forward with this evidence rests with the parent. *In re Pasco,* 150 Mich App 816, 821-822; 389 NW2d 188 (1986).

In this case, respondent offered evidence that his incarceration would end in the near future and he would take steps to establish a home for the child and obtain employment. However, no one from the Department of Corrections confirmed respondent's statement that he would be entitled to parole in

the next twelve months. The probate court did not err in terminating respondent's parental rights pursuant to subsection (f).

Affirmed.