# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. L. LICARI, Minor.

UNPUBLISHED
June 7, 2016

Nos. 329806, 329807
Monroe Circuit Court
Family Division
LC No.   13-022925-NA

Before:  GADOLA, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

In these consolidated appeals, respondent mother L. Licari and respondent father M. Leverette appeal as of right the trial court's order terminating their parental rights to the minor child, AL, pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j).  We affirm.

## I.  BACKGROUND FACTS

The respondents had a volatile relationship and routinely broke up and reconciled.  They broke up shortly before AL's birth.  Licari left Leverette and was staying in Monroe County when AL was born in March 2013.  The couple married in February 2014 and was living in Wayne County when another child, EL, was born in July 2014.  EL became the subject of child protective proceedings in Wayne County.  Leverette was not a named respondent in the initial petition for temporary custody of AL.  He was afforded an adjudicatory hearing in September 2014 and the trial court found that it had jurisdiction over AL with respect to Leverette.[1] Respondents failed to make substantial progress with their case service plans and petitioner filed a supplemental petition to terminate their parental rights, which the trial court granted.

## II.  RESPONDENT FATHER'S ISSUES IN DOCKET NO. 329806

Respondent Leverette first argues that the trial court erred in finding that petitioner made reasonable efforts to reunify him with AL because it did not assist him with transportation.  We review the trial court's factual findings for clear error, MCR 3.977(K), and this standard of

---

[1] Leverette appealed that decision and this Court affirmed.  *In re Licari*, unpublished opinion per curiam of the Court of Appeals, issued May 19, 2015 (Docket No. 324214).

review applies to a finding "that reasonable efforts were made to preserve and reunify the family." *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005).

"In general, petitioner must make reasonable efforts to rectify conditions, to reunify families, and to avoid termination of parental rights." *In re LE*, 278 Mich App 1, 18; 747 NW2d 883 (2008). Specifically, "[r]easonable efforts to reunify the child and family must be made in all cases" unless certain aggravating circumstances are present, MCL 712A.19a(2), and aggravating circumstances do not appear to exist in this case.

Respondents had a car that worked intermittently. While the car did not always work, it was unclear just how much it affected Leverette's mobility, given that he testified that he had friends who gave him rides and even used cabs to get to the places where he needed to go. At the time of Leverette's dispositional hearing, the car was apparently not working. At that time, Licari indicated that bus service was available within Wayne County, so the trial court directed that family visits occur at a public place in Flat Rock and that petitioner assist the parents with transportation, either by providing actual rides, a gas card, or bus fare. The trial court also ordered that respondents must provide clean drug screens before visits. The trial court allowed the parents to test at a facility in Wayne County, if it could be arranged. The foster-care worker, Katie Tatro, left bus fare at Leverette's house shortly thereafter. She later gave Leverette one six-dollar gas card. She explained that the agency allotted just enough gas money to get to and from the visit to make sure it is "used for the intended purpose," and another card would be provided at the end of the visit for the next visit. However, respondents had already ceased visitation by that time because they were not providing the requisite drug screens. Tatro testified that she agreed to switch visits from Flat Rock to Trenton because it was accessible by bus and to accept three screens during the preceding week in lieu of an instant screen. She also agreed that the screens could be done in Wayne County and coordinated with EL's foster-care worker so that Leverette "just screened one time for both of us," but he was still noncompliant. While Leverette testified at the termination hearing that there was no bus service in Melvindale, where he was then living, he also testified that he deliberately ceased communications with Tatro around the time he moved there, if not before. The caseworker cannot be expected to provide additional assistance if she is unaware that it is required. Based on the evidence presented, the trial court did not clearly err in finding that reasonable efforts to reunify the family had been made. See *In re Rood*, 483 Mich 73, 115-118; 763 NW2d 587 (2009).

Leverette next argues that the trial court erred in finding that the statutory grounds for termination had been established. The trial court's finding that at least one statutory ground for termination has been proved by clear and convincing evidence is reviewed for clear error. *In re Laster*, 303 Mich App 485, 491; 845 NW2d 540 (2013); MCR 3.977(K). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

The trial court did not clearly err in finding that § 19b(3)(c)(*i*) was established by clear and convincing evidence. Leverette became a respondent in these proceedings in July 2014. The initial dispositional order was entered against him on October 3, 2014. The termination hearing began on July 30, 2015, more than 182 days later. The conditions that led to the adjudication included Leverette's relationship with Licari, which was unstable due to discord and

domestic violence, and Leverette's alcoholism and substance abuse. Leverette was provided with services to address these issues. The relationship between respondents remained unstable; following the dispositional hearing, Licari left Leverette for periods of time in November 2014 and in January, February, and March 2015. She returned to Leverette in April 2015 and two months later, Leverette was arrested for domestic violence. Although Leverette pleaded guilty, he testified that he never assaulted Licari and entered the plea for the sake of expediency. Leverette participated off and on in counseling to address his issues, but would not provide drug screens on a consistent basis. In December 2014, he tested positive for alcohol. One of his therapists opined at the time that he was in "major denial" and did not recognize that he had a problem. In April, May, and June 2015, he tested positive for Suboxone, a prescription medication, but he did not have a valid prescription between November 2014 and August 2015. Given this evidence, the trial court did not clearly err in finding that the condition that led to the adjudication continued to exist. And, considering that the child had been in foster care for more than two years and that Leverette continued to deny that he had any problems with domestic violence or substance abuse, the trial court did not clearly err in finding that the conditions were not likely to be rectified within a reasonable time considering the child's age.

The trial court also did not clearly err in finding that § 19b(3)(g) had been established by clear and convincing evidence. As this Court determined in the prior appeal, "there was evidence that [Leverette] was unable to provide proper care or custody for A.L. and that his home was an unfit place for A.L.," given that Leverette "had a history of domestic violence with the child's mother with whom he lived," and had "problems with alcohol" among other things. *In re Licari*, unpublished opinion per curiam of the Court of Appeals, issued May 19, 2015 (Docket No. 324214), slip op at 8. At the time of the termination hearing, Leverette was still living with Licari and neither of them had overcome their substance abuse issues. There was evidence that an incident of domestic violence had occurred in front of Leverette's son SL, and domestic violence continued to be a problem as indicated by Leverette's recent arrest and by respondents' testimony minimizing or denying the incident. In addition, Leverette did not have sufficient income to meet the family's needs and had no concrete plans for improving his financial situation. He also placed his ongoing substance abuse before the needs of the child in that he had ceased all contact with the child for a year because he did not want to cooperate with the drug screening process. The fact that Leverette had made so little progress in rectifying these issues since entry of the initial dispositional order supported a finding that he would not be able to provide proper care and custody within a reasonable time considering the child's age.[2]

### III. RESPONDENT MOTHER's issues in DOCKET NO. 329807

As noted, Licari was the only named respondent in the initial petition for temporary custody of AL. The trial court acquired jurisdiction when Licari entered a plea of admission at

---

[2] We do not consider whether termination was also established under § 19b(3)(j) because only one statutory ground for termination need be established. *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

the preliminary hearing. Licari now argues that the trial court erred in accepting her plea. This issue is not properly before this Court because this challenge to the plea proceeding amounts to an improper collateral attack on the trial court's assumption of jurisdiction. The law is clear that where an adjudicatory hearing is held with respect to the parent challenging the assumption of jurisdiction and termination is not ordered at the initial dispositional hearing, the trial court's exercise of jurisdiction cannot be challenged on appeal from a subsequent termination decision; it can only be challenged by direct appeal from the initial order of disposition. *In re Hatcher*, 443 Mich 426, 444; 505 NW2d 834 (1993); *In re SLH, AJH, & VAH*, 277 Mich App 662, 668-669; 747 NW2d 547 (2008). Therefore, Licari is precluded from challenging the trial court's exercise of jurisdiction in this appeal.

Licari next challenges the trial court's denial of her motion for a change of venue. A motion for a change of venue improperly laid is reviewed for clear error, whereas a motion for change of venue properly laid is reviewed for an abuse of discretion. *Shock Bros, Inc v Morbark Indus, Inc*, 411 Mich 696, 698-699; 311 NW2d 722 (1981).

Venue was properly laid in Monroe County because the child was located in Monroe County when the initial petition was filed and did not have another place of residence. See MCL 712A.2(b); MCR 3.926(A) and (B). If venue is properly laid, it may be transferred to another county "for the convenience of the parties and witnesses, provided that a judge of the other court agrees to hear the case, or when an impartial trial cannot be had where the case is pending." MCR 3.926(D). Licari sought a change of venue for convenience based in part on the fact that she was living in and participating in services in Wayne County in connection with EL's case and had problems with transportation to Monroe County. We thus review the trial court's ruling for an abuse of discretion. *Shock Bros, Inc*, 411 Mich at 698-699. A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 629; 853 NW2d 459 (2014).

We do not disagree that Wayne County would have been a convenient forum for Licari, at least during the periods that she was residing with Leverette. But the record shows that she continued to spend time in Monroe County even after her motion was filed. In addition, this case had been pending for almost two years at the time she filed the motion and the trial court "was familiar with the case and surrounding circumstances," *In re Pasco*, 150 Mich App 816, 824; 389 NW2d 188 (1986), including the fact that petitioner was already recommending termination of parental rights. Further, all services were being provided, and family visits were made available, in Wayne County and the foster-care workers in both counties were coordinating services to avoid duplication of efforts. Finally, the evidence at the termination hearing showed that Licari was no more compliant with services in connection with the Wayne County case than she was in this case. Given this record, the trial court did not abuse its discretion in denying Licari's motion for change of venue.

Licari next argues that the trial court erred in terminating her parental rights because she was a victim of domestic violence. Issues of law are reviewed de novo on appeal. *Ter Beek v Wyoming*, 495 Mich 1, 8; 846 NW2d 531 (2014).

This Court has held that it is "impermissible for a parent's parental rights to be terminated solely because he or she was a victim of domestic violence[,]" but that termination is

permissible where the victim's "own behaviors were directly harming the children or exposing them to harm." *In re Plump*, 294 Mich App 270, 273; 817 NW2d 119 (2011). In this case, the trial court found that respondents' volatile relationship and continuing domestic violence were barriers to reunification and relied on this factor in finding that §§ 19b(3)(c)(*i*) and (j) had been proved with respect to Licari. There was evidence that AL had been harmed by Licari's own behaviors because Licari used drugs during her pregnancy and AL tested positive for drugs at birth and had to be treated for withdrawal symptoms. Apart from substance abuse, the trial court found that Licari's own behaviors exposed the child to a risk of harm, given that Leverette was unable to curb his violent impulses and Licari kept going back to him and minimized his behavior. Further, the domestic violence was only one factor which led to the trial court's decision to terminate Licari's parental rights under §§ 19b(3)(c)(*i*) and (j), and does not appear to have been a factor that led to the termination of Licari's parental rights under § 19b(3)(g). Rather, the court relied primarily on Licari's continuing substance abuse problem, unstable housing, and inability to support the child financially. Accordingly, there is no basis for reversing the trial court's decision on this ground.

## IV. ISSUE COMMON TO BOTH RESPONDENTS

Both parents challenge the trial court's finding that termination of their parental rights was in the child's best interests. The trial court's decision regarding the child's best interests is reviewed for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014); MCR 3.977(K).

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). Whether termination is in the child's best interests is to be determined by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). In deciding whether termination is in the child's best interests, the trial court may consider a variety of factors, including the parent's parenting ability, *In re Jones*, 286 Mich App 126, 129-130; 777 NW2d 728 (2009); the parent's history of substance abuse or mental health issues, *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001); the parent's compliance with his or her case service plan, *In re White*, 303 Mich App at 714; the child's bond to the parent, *In re BZ*, 264 Mich App at 301; the maintenance of sibling relationships, *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012); the advantages of a foster home over the parent's home and the possibility of adoption, *In re White*, 303 Mich App at 714; *In re Foster*, 285 Mich App 630, 634-635; 776 NW2d 415 (2009); and the child's "need for permanency, stability, and finality," *In re Gillespie*, 197 Mich App 440, 446-447; 496 NW2d 309 (1992). "[A] child's placement with relatives weighs against termination," *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010), and if a child is living with a relative when the case proceeds to termination, the trial court must "explicitly address whether termination is appropriate in light of the child[ ]'s placement with relatives" in making its best-interests determination. *In re Olive/Metts*, 297 Mich App at 43.

The trial court found that termination of respondents' parental rights was in AL's best interests for several reasons. Specifically, AL had a close relationship with her foster parents and her needs were being met in their home; the foster parents were open to adoption and could

provide permanency and stability for AL; the foster parents had not expressed any interest in a guardianship; any bond AL had with respondents had diminished due to their absence from her life; respondents lacked stable housing and adequate income; and, respondents lacked adequate parenting ability due to their criminality, substance abuse, and instability. The trial court also gave due consideration to the child's placement with the foster parent, who was a relative, and found that termination was nonetheless appropriate because neither respondent had an amicable relationship with the relative or his partner. While not each factor applied equally to each respondent, it was appropriate to consider both respondents together because they planned to stay together and raise the child in their home. The trial court did not expressly address the child's relationship with her siblings, but the evidence showed that she lived in the same home as Licari's adult son, and the foster parents had encouraged a relationship between AL and EL. Termination would not adversely affect any relationship with Leverette's other children because AL did not have a relationship with them. In light of the evidence, the trial court did not clearly err in finding that termination of respondents' parental rights was in the child's best interests.

Affirmed.


/s/ Michael F. Gadola
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro