*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. S. ALLEN, Minor.

UNPUBLISHED
April 25, 2024

No. 365457
Wexford Circuit Court
Family Division
LC No. 22-030538-NA

Before: M. J. KELLY, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Petitioner, the Department of Health and Human Services (DHHS), appeals by right the trial court's order dismissing a petition for removal of the minor child, JA, on the basis of lack of venue. We reverse and remand.

## I. BACKGROUND

JA and his mother lived in Wexford County. Respondent, who is JA's legal father and lives in Georgia, had been absent for the majority of JA's life. In October 2022, petitioner filed a petition for removal, alleging that JA was at risk of significant harm because of the mother's substance abuse, homelessness, domestic violence, and refusal to work with JA's caretakers. Petitioner further alleged that respondent's last known address was in Georgia, that petitioner had been unable to locate respondent, and that respondent had no relationship with JA. Petitioner alleged that both parents had abandoned JA. At the preliminary hearing, respondent was absent but represented by counsel. Testimony showed that the mother was homeless and that JA was living in his former foster home. Petitioner recommended that JA continue in this placement. The court found that there was probable cause to support the allegations, took jurisdiction over JA, and placed JA with the department. Respondent was given supervised parenting time.

One month later the mother passed away, and after she was removed from the petition, respondent's counsel made an oral motion to have JA returned to respondent. Alternatively, respondent requested unsupervised visits from JA to Georgia. The parties and trial court agreed that the motion would be postponed until after the Christmas holiday; instead, JA would visit respondent during the holiday season. In January 2023, the trial court convened a placement hearing, and both petitioner and the guardian ad litem opposed returning JA to respondent's care at that time because of the lack of a relationship between JA and respondent, JA's grieving for his

mother, and JA's connection to Wexford County. However, the goal remained reunification. The holiday visit had not occurred because of illness, and JA was ordered to visit respondent in late January for a one-week visit. The trial court also entered a mediation order in which the parties agreed to various visits throughout February and March.

However, in mid-February, petitioner filed an amended petition against respondent alleging domestic issues, absence for long periods of JA's life, and an extensive criminal history involving drug possession and physical violence. Furthermore, petitioner alleged that JA struggled with his mental health after the loss of his mother, and that JA needed to remain with his foster family to help stabilize his mental health. Petitioner requested that the trial court take jurisdiction over JA and remove him from respondent's care. Another amended petition was subsequently filed in which petitioner alleged that JA, who was a teenager, was refusing to visit respondent in Georgia and that new criminal charges had been filed against respondent. Petitioner also moved to suspend respondent's parenting time, relying on the same grounds as in its petitions.

In March, the trial court convened a hearing on this motion. The court stated that it had met with the parties in chambers to discuss whether venue was proper, and this was the first time venue was mentioned by either the parties or the trial court. Both respondent and the guardian ad litem opined that venue was proper in Georgia, while petitioner argued that venue was proper in Wexford County because JA was "physically present" in the county. The trial court determined that venue was not proper in Wexford County, and dismissed the petitions.

## II. ANALYSIS

### A. STANDARD OF REVIEW

We review for an abuse of discretion a decision on change of venue. See *Shock Bros, Inc v Morbark Indus, Inc*, 411 Mich 696, 698; 311 NW2d 722 (1981); *Chilingirian v City of Fraser*, 182 Mich App 163, 165; 451 NW2d 541 (1989). An abuse of discretion occurs when the trial court's decision is "outside the range of reasonable and principled outcomes." *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007). Additionally, the "trial court necessarily abuses its discretion when it makes an error of law." *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016). Questions of statutory or court rule interpretation, construction, and application are reviewed de novo. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). We review for clear error a court's exercise of jurisdiction over a child. *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). "To properly exercise jurisdiction, the trial court must find [by a preponderance of the evidence] that a statutory basis for jurisdiction exists." *Id*.

### B. DISCUSSION

Petitioner argues that the trial court improperly dismissed the petition because JA was found within Wexford County.

The same principles for statutory interpretation and application apply to court rules. *Haliw v Sterling Hts*, 471 Mich 700, 704-705; 691 NW2d 753 (2005). "When interpreting a statute, we must ascertain the Legislature's intent," which is accomplished "by giving the words selected by the Legislature their plain and ordinary meanings, and by enforcing the statute as written." *Griffin*

*v Griffin*, 323 Mich App 110, 120; 916 NW2d 292 (2018) (quotation marks and citation omitted). If a statute is unambiguous, it must be applied as written. *McQueer v Perfect Fence Co*, 502 Mich 276, 286; 917 NW2d 584 (2018). We may not read something into the statute "that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Id*. (quotation marks and citation omitted). A statute must be read as a whole, *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009), and we "must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory," *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002).

MCL 712A.2, which is part of the Probate Code of 1939, MCL 710.21 *et seq*., provides the grounds under which Michigan courts may take jurisdiction over minor children. Relevant to this appeal is MCL 712A.2(b), which provides that a court has jurisdiction when a child is "found within the county" and "is subject to a substantial risk of harm to his or her mental well-being," is "without proper custody or guardianship," is "abandoned by his or her parents, guardian, or other custodian," MCL 712A.2(b)(1), or when the "home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent . . . is an unfit place for the juvenile to live in," MCL 712A.2(b)(2). "[A] child is 'found within the county' in which the offense against the child occurred, in which the offense committed by the juvenile occurred, or *in which the minor is physically present*." MCR 3.926(A) (emphasis added).

At the outset of this case, and throughout the proceedings, JA was living in Wexford County. Accordingly, at the time the petition was filed, JA was "found within the county" because he was "physically present" there. There were allegations that respondent had been absent from JA's life for approximately 12 years. Later on, new allegations arose of criminality, domestic issues, and mental health concerns for JA. Therefore, the requirements of MCL 712A.2(b) and MCR 3.926(A), assuming there was probable cause to support them, would be met. Although the trial court expressed concern that respondent was in Georgia and that the allegations occurred in Georgia, this was immaterial because JA was "found within" Wexford County. Similarly, although the trial court appeared to be concerned with the costs of dispositional services, this had no bearing on whether JA was "found within the county" for purposes of MCL 712A.2(b) and MCR 3.926(A).

Furthermore, the trial court had authorized a petition before the death of JA's mother, the court was familiar with the case and circumstances, and there was no argument that respondent would be unable to attend the proceedings. See *In re Pasco*, 150 Mich App 816, 824; 389 NW2d 188 (1986) (reasoning that "[t]he motion came over three years after the court assumed jurisdiction," that the trial court had been "familiar with the case and the surrounding circumstances," and that "no evidence was presented that denial of the motion would prevent respondent from attending the termination hearing"). Although the trial court was convinced that JA should be returned to respondent's care because he was JA's father, serious allegations were pending against respondent. There were also allegations that JA needed time to process his mother's passing and that respondent's forcefulness about seeking visits was seriously and negatively affecting JA's mental health. See *In re Anjoski*, 283 Mich App 41, 44; 770 NW2d 1 (2009) (holding that a surviving parent is not automatically entitled to have their child returned "where sufficient legitimate and compelling indicia exist on the record indicating that a noncustodial parent is currently unfit"). On remand, the trial court must examine the amended petitions' allegations and determine whether there is probable cause to authorize the amended

petitions. If respondent should move for a change of venue to Georgia, the trial court must follow MCR 3.926[1] to determine whether transfer to another court is warranted.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Christopher M. Murray

---

[1] At the time of the petition, JA did not reside in a county *with* JA's sole legal parent, and no county was presumed to be JA's county of residence under MCR 3.926(B)(1). Accordingly, the factors in MCR 3.926(B)(2) may be relevant considerations before ordering the case transferred.